(48 Misc. Rep. 362.)

### WILENTSHIK v. MESSLER.

(Supreme Court, Appellate Term. October 27, 1905.)

1. SALES—ORDER FOR GOODS—ACCEPTANCE.

An order for goods, containing the words, "Kindly acknowledge acceptance of above order and conditions," did not become a binding contract until assented to by the vendor.

[Ed. Note.—For cases in point, see vol. 43, Cent. Dig. Sales, § 46.]

2. SAME—ACCEPTANCE OF ORDER—EVIDENCE.

In an action for breach of contract to deliver goods according to an alleged contract of sale, evidence considered, and held insufficient to show an acceptance by defendant of plaintiff's order.

Appeal from Municipal Court, Borough of the Bronx, Second District.

Action by Bernard Wilentshik against Arnold C. Messler for damages for breach of an alleged contract of sale. From a judgment for plaintiff, defendant appeals. Reversed.

Argued before SCOTT, P. J., and BISCHOFF and FITZGER-ALD, JJ.

George W. Galinger, for appellant.
Mark Goldberg, for respondent.

SCOTT, P. J. The plaintiff's claim in this action is set forth in a bill of particulars as follows:

. "On or about the 24th day of March, 1905, the defendant and one Joseph F. Polard, plaintiff's assignor, entered into an agreement whereby the defendant promised and agreed to deliver to the said Joseph F. Polard one hundred thousand rings as per sample, at a price agreed upon between them. That the defendant failed to comply with the said agreement and to deliver the said rings, or any part of them. That the defendant was therefore compelled to purchase rings at a higher price. That the price agreed upon between the defendant and the said Joseph F. Polard was five and $^{50}/_{100}$ dollars per gross, and that the market price of the said rings, and which the said Joseph F. Polard was obliged to pay, was twelve dollars per gross. That this action is brought by this plaintiff as assignee of the said Joseph F. Polard for the damage so sustained by the said Joseph F. Polard by reason of the failure of the defendant to deliver the said rings."

The plaintiff recovered a judgment for $500. The disputed question of fact in the case was whether the defendant agreed to make and deliver rings exactly like the sample one offered and received in evidence, which was what is known as "rolled gold," or whether the defendant was to deliver rings similar to the sample one, except that they were to be "electro-plated." From a careful examination of all the testimony given I am of the opinion that the plaintiff failed to sustain the burden of proof cast upon him of showing that the rings to be made for his assignor were to be "rolled gold." It appears that Polard, the plaintiff's assignor, and Heiter, a salesman of the defendant, had a conversation prior to March 24th regarding the price at which the defendant would furnish 100,000 rings to Polard similar in quality to a sample shown. Heiter testifies that upon February 26, 1905, he showed Polard a letter, which letter is in evidence, from the defendant, stating in substance that rolled gold rings would cost $8.12 per gross in lots of 100,-000; that Polard declined to order at that price and wanted something cheaper; that thereupon he (Heiter) submitted the sample ring to the defendant, and received a letter from him, dated March 7th, stating that rings like sample, but "electro-plated," would be furnished at $5.50 per gross. This letter, also in evidence, to Heiter, was shown to Polard, who subsequently, under date of March 24, 1905, signed a written order and mailed it to the defendant for 100,000 rings "quality to be the same as sample ring." The sample ring was tagged and sealed, and upon the tag were the words, "Sample of quality and ring ordered by J. F. Polard." There also appeared therein the words: "The A. C. Messler Co., per Heiter." This order contains no reference to "electro-plated" rings, and but for this order there would apparently be no controversy.

Polard, while admitting that the defendant's salesman, when the sample ring was first submitted to him, stated that those kinds of rings would cost about $8.50 per gross, contends that the only price subsequently fixed was $5.50 per gross, and that no letter from the defendant was ever shown him fixing the price of rings at $8.50 per gross for rolled gold and $5.50 for electro-plated rings; and he further contends that Heiter accepted such order at the time when given (March 27, 1905). It is significant, however, that the order contains these words: "Kindly acknowledge acceptance of above order and conditions." Polard admits that to this order he never received any reply. He also admits that upon March 31, 1905, and before any rings were delivered to him, Messler, one of the defendants, and Heiter, the salesman, called upon him, and in a conversation then had Messler spoke about sending electro-plated rings, and in reply thereto Polard said:

"I don't care what you call it—electro-plate, or brass, or solid gold, or anything. What I am contracting for is a ring like sample sealed and signed by you."

He also says that in that conversation Mr. Heiter said:

" 'Mr. Polard, we have made a test of this ring that you submitted to me, and the ring is electro-plated, and therefore we will give you electro-plated rings.' I said: 'Very well, I don't care whether you call it electro-plated, or solid gold, or brass. I want a duplicate of this ring sealed by you.' And he said: 'All right, we will guaranty that this ring is electro-plated, and therefore you will get the same quality as this ring.' "

Messler testifies that he made no reply to the letter or order of March 27, 1905, but on the 31st following, in company with Heiter, called upon Polard, and stated that "I came to see you regarding that ring, so that there will be no misunderstanding about it; that we are going to make you an electro-plated ring for $5.50 a gross net cash;" that Polard then gave an order for several gross of different sizes. In this he was corroborated by Heiter, who was present. Subsequently several gross of rings were delivered, and upon May 1, 1905, Polard wrote Messler & Co. that 25 gross of rings had been delivered, that they were not of the quality ordered, and asking to be advised at once what disposition was to be made of the rings. To this Messler & Co. replied the next day that the rings furnished were exactly as agreed upon, and that they had held up the further making of the rings ordered, and would ship no more until they heard from Polard. There was testimony to the effect that rolled gold rings like the sample were worth from $12 to $15 per gross.

It cannot be said that the order of March 27th became a binding contract until assented to by the defendants (Blum v. Daly, 22 Misc. Rep. 342, 49 N. Y. Supp. 136), and it is not shown that the defendants ever assented thereto, unless the act of Heiter in signing the defendant's name to the tag attached to the sample ring can be considered as binding the defendants. It does not appear that Heiter had express authority to bind the defendants. That the plaintiff's assignor did not so consider it is shown by the addition of the words to the order: "Kindly acknowledge acceptance," etc. There was no acceptance otherwise by the defendants. The subsequent interview of March 31st is not disputed, and as to what occurred there the defendant's version is the

more reasonable one, and is sustained by the probabilities that Messler would not agree to supply rings at $5.50 per gross that are conceded to cost from $8 to $12 per gross to manufacture. It is quite clear that, if we take all the testimony as given to be true, there was no meeting of the minds of the parties, so as to constitute a valid enforceable contract. "Parties must assent to the same thing in the same sense, and the proposition must be met by an acceptance which corresponds with it entirely." Story on Contracts, § 378. Polard understood that he was to have rolled gold rings at $5.50 per gross, while the defendants understood that the rings at that price were to be electro-plated. The plaintiff has failed to show a valid, binding contract as set forth by him in his bill of particulars, and the judgment must be reversed.

Judgment reversed, and new trial ordered, with costs to appellant to abide the event. All concur.